May it please the Court, my name is James Spertus. I represent the insured Robert Rizzo. I represented him in the district court proceedings below. I represented him in the parallel civil actions underlying this coverage dispute. And I represented him in the related criminal cases related to this dispute. I'd like, if possible, to reserve five minutes for rebuttal. We're asking the Court to vacate the district court's ruling that there was no, finding that there was no duty to defend. We're asking the Court to find that there was a duty to defend the civil cases, to find that the defense of the criminal cases was reasonable and necessary to defend the civil cases. And we're asking for a remand at a minimum to deal with the unrelated causes of action in the complaint that do not depend on the duty to defend issue. There is a pending request for judicial notice filed by Mr. Rizzo that establishes that we successfully defended the civil cases. The civil cases had professional negligence claims. The underlying plaintiffs, the Attorney General for the State of California and the City of Bell, pursued two avenues, one a negligence theory and the other an intentional misconduct theory. And we successfully defended that case. The law in California is unequivocal that if there are covered causes of action, the carrier has a duty to defend the entire action. What is most confusing... Is it clear in California that if you have both a criminal action and a civil action, to which there's clearly some overlap, that an insurance company has a duty to defend the criminal action? So the issue of what... Yes, that's the Aerojet line of cases. And the issue here is not whether the policy has a duty to defend a criminal action if it was tendered as a freestanding action. There is precedent for people tendering a criminal case, saying I may potentially be sued in the future civilly, so carrier please defend this. But that's not what we have here. We have a prior filed civil action. Then we have a subsequently filed related criminal action that must be defended in order to defend the civil case. So the law in California is clear that any work that's reasonable and necessary for the defense of the civil case... In order to reach that issue, don't we have to conclude preliminarily that the... Don't we have to get to exclusions O&P and the question of whether these claims are inextricably intertwined? Yes. And you have to win on that issue, on those issues, and then we can get to the criminal case, right? Yes. Yes. And the exclusions O&P were waived. Tell me more about that. Because I actually, I think I have pretty good notes on the correspondence between the insurance company and the insured. And it seems to me that there is a reference in all of the correspondence to the exclusions of O&P. So their letter of December 16, 2010, their letter of April 28, 2011. And it might be, I think it can fairly be said that in all these letters they don't say we're denying coverage based on these exclusions. But there's a very clear reservation of rights in each of these letters saying just because we've said whatever else we've said, we're not waiving these exclusions. And then you get to December, excuse me, October 7, 2011, and they say if any damages awarded fall within the, well anyway, this question is taking too much of your time. But I guess I read, I don't see an absence of reference to O&P. I see that it's ubiquitous. Your Honor, it's not just simply is there a reference to an insurance policy. Otherwise carriers would quote their whole policy in their reservation of rights letter. The reservation of rights letter, it's ER 827, states exactly why O&P is quoted in the letter. And it's very clear to the extent damages are awarded for a wrongful act arising from a crime or other fraudulent conduct, coverage would not apply. So this is a duty to defend case. If this were an indemnity case, the analysis would be entirely different. And the inextricably intertwined analysis done by the district court is erroneous because it focuses on indemnity cases and other distinguishable cases. I'd like to address that. But there's a controlling California Supreme Court case right on point, Horace Mann. It's cited extensively in our reply brief based on the opposition brief. But most importantly, no party briefed this inextricably intertwined argument for the district court. The district court came up with this on its own and skipped Horace Mann. Does the policy have anything to do with the duty to defend? Do we look at the insurance policy to see what it says when we are considering whether the insurance company has a duty to defend? Not fresh, not de novo, is there any basis on which there could not be a duty to defend? The carrier itself acknowledged there was a duty to defend. There were claims for professional negligence. So the starting point is, yes, there's a duty to defend, and the carrier agreed. The withdrawal letter is really important to this analysis because when the carrier withdrew its defense, it was in response to a demur filed by the AG in the civil cases, and it was based entirely on exclusion EE. The attorney general had written that we are not seeking damages. They were trying to respond to a successful demur previously made that if they're seeking money damages, there are procedures that the attorney general didn't comply with. So in a demur, they said we're not going to seek money damages, and the carrier then jumped in and withdrew its defense based entirely on exclusion EE. And so, yes, it does matter the reasons why the carrier withdrew, and there was no reservation of rights of O&P. The reference to O&P is very clear. It's limited. It's to the extent there's an indemnity issue. But the carrier never raised O&P in the context of duty to defend, and so that's waived. That's Rusty's and its progeny, and we briefed that extensively. But the biggest, I think, mistake that crept into the district court briefing was all of the argument that Mr. Rizzo had been charged with, stealing from the city, embezzlement. There was no allegation in any complaint, even the criminal case of theft or embezzlement. This was a negligence case actually in both forms. You know, counsel, as I look at the O&P, and I'm looking at it as they're quoted in the December 16th letter, you know, exclusions O&P say we will not defend or pay. So it includes both the question of whether to indemnify and the question as to whether to defend in the first instance. They could have denied coverage, I'm sorry, denied a defense based on O&P, and then this litigation would have been about whether or not that was proper. This whole litigation is focused on the reservation of rights letter, which reserves the only basis for denying a defense, and that's why ER 827 is so important. They had a limited invocation of O&P. That's the point. If they had said we won't cover you because even though – Right, but if they don't have to cover you, then they can also decide not to defend you. But they didn't because this was a professional negligence case, and that's what the error of the district court is based on. There are allegations of covered and uncovered conduct. And in that, I'm looking at the top of 828, because this is the carryover line from the paragraph at the bottom of 827 that you're referring to, and they tell you there that ICSOP would be entitled to reimbursement from RISD for the cost of defending those claims. If they're entitled to reimbursement for the cost of defending, then why can't they decide not to defend you in the first place? They could have, but didn't. And the Rusty's progeny aren't cases that say here, these other bases that the courts below had found justified denying coverage were legitimate. The Rusty's and his progeny find that unless you reserve in the reservation of rights letter the basis for denying coverage or defense, then you must defend. Professional negligence, this will become the most cited case, period, for allowing a carrier to recast professional negligence cases into other conduct. Horace Mann dealt with this. The Supreme Court of California. Didn't Horace Mann say that the duty to defend is not extinguished when there is a dispute of fact about whether or not the conduct was intertwined? That's correct, and the withdrawal of the defense was done on April, I think, 23rd, 2011. So our analysis is rolling back to that date when the defense was withdrawn, and it is impossible to say that these were undisputed facts. In fact, the Court of Appeals in California affirmed dismissal with prejudice. The district court below cited an appellate decision that had remanded the case to allow an attorney general to re-plead cases, but that was an error, and we tried in our motion for reconsideration to correct that error. The Court of Appeals had actually affirmed dismissal based on immunity grounds. So there were clearly covered and uncovered claims, and to this day Mr. Rizzo would prevail, I think, in a reimbursement claim. But that's a future action that the carrier can bring against Mr. Rizzo. We entered our appearances, and the duty to defend can exist, and if the carrier wants one day to sue Mr. Rizzo, I guess they can do that. I think they would lose. Counsel, again I'm looking at the December 16th letter, and now I'm back to 835. I mean, there's a lot of different language here, and on 835 they've cited O&P again, as well as exclusion EE, and they've said here that there's no duty to defend, and they've said, well, we agree to pay reasonable and necessary costs defending against the attorney general action. Two paragraphs later it says, look, we reserve our right to seek reimbursement from you if we determine that you're not covered, and EXOP also reserves the right to withdraw from defending. So, I mean, if they've said right there, we reserve the right to withdraw from defending, haven't they told you that there was a possibility they would not defend you? No, they have not, because all of those clauses the Court's reading are dealing with the right to get reimbursement from Mr. Rizzo, or the right to in the future when the facts become known withdraw from a defense or do a wide variety of things. But the right to withdraw from a defense, it seems to me, has got to be based on the right not to defend you in the first instance. It does, yes. And if they've got the right not to defend you in the first instance, then what's the problem? They would have to cite what willful conduct falls within O&P, just like they did in fact cite EE when they did withdraw. It's not a question of just naming all the exclusions in an insurance policy in a reservation of rights letter and then just terminating the defense. They'd have to say why they terminated the defense. They did that in this case. You think on this record Mr. Rizzo reasonably expected to be defended for the conduct which he committed in this case? Absolutely, Your Honor. The underlying complaint, I apologize, but the underlying complaint controls that analysis very, very clearly. And the underlying complaint, if I can just direct the court specifically. Yeah, but what do we decide it on? Do we decide it on the language of the policy when we look at the policy? We decided on ER-660, which is the complaint that alleges professional negligence against Mr. Rizzo, which was in fact affirmed on appeal that Mr. Rizzo had immunity for those claims. He could not be sued for that negligence. And ultimately in March 2015, the AG dismissed its case entirely. So you rely on the complaint. That's what California law requires. In fact, if I could just highlight the unprecedented nature of this ruling because in California, even if there was just evidence that placed in dispute whether or not an insurance action would eventually be determined to constitute an occurrence and a carrier must defend, to MD casualty and all the cases that stem ultimately from the reasoning of Graver Zurich require a defense that there's a question. I don't know that your opponent disputes that some of the claims standing alone might be covered. The question is, this brings us back to inextricably intertwined. And isn't that question to be cited on the essence of the underlying claims as opposed to labels? What was the underlying conduct? Essentially, isn't that the test? It could be. First of all, that's the… I'll take could be. Okay. And the underlying conduct was that Mr. Rizzo allegedly, although he's now serving time, so I guess I don't need to say allegedly, Mr. Rizzo approved contracts for persons, including himself, within the city of Bell that he knew were wrong. Your Honor, that misstates the record. Mr. Rizzo is serving time because of the misappropriation and conflict of interest counts. So the criminal case counts are a subset of the case that the AG brought and the city brought. Fine. I accept the friendly amendment. So it doesn't have to do with the criminal case. I'm just saying that the essence of the alleged underlying conduct, I think, was as I stated. No, but it wasn't. Angela Spassia's contract, the police chief Randy Adams' contract, was not even alleged to be a you scratch my back, I'll scratch your back thing. The district court erred by finding a fact that the gravamen of the case was each scratches the other's back. And to allow a carrier to do that would eliminate the obligation to defend as long as there's a question. Was Chief Adams' contract raised for the first time in reply? No, it was not. The fact is that nobody raised the inextricably intertwined argument in the district court, and neither party briefed any of those cases that were miscited, I respectfully submit, which include Ehrlich and Minterash, Matt Hill, and Coit, interestingly skipping Horace Mann, required us in a motion for reconsideration to highlight for the court that it can't just come up with its own inextricably intertwined argument, and there's a contract here that has nothing to do with Mr. Rizzo reviewing his own contract. You're referring to Chief Smith's contract. Randy Smith. Chief, yeah, Police Chief Adams' contract. I'm sorry, Adams, Chief Adams' contract. And that contract was raised in your opening brief here? Yes. I see. All right. Thank you. And so was the Spossier contract. It's just factually incorrect to say that the gravamen of the underlying civil case was willful misconduct because, and that's why I'm directing the court so precisely to ER-660, which is the complaint. That is what the court will analyze to determine whether there's the potential for coverage. And it's just incorrect to say that Mr. Rizzo is serving time for the same allegations that were made in the civil case and that Police Chief Adams' contract or Spossier's contract that anyone has ever alleged that's part of a he-scratches-your-back-I-scratch-your-back argument. The inextricably intertwined, those cannot be inextricably intertwined because the dismissals were affirmed on appeal in the state court. You may want to save some time. I do want to save some time. Thank you. Thank you. Thank you. Good morning. May it please the Court, Sarah Thorpe on behalf of Insurance Company of the State of Pennsylvania, referred to as ICSOP in these proceedings. And we're here, Your Honor, to request that you all affirm the district court's decision, and you can do so on a number of different grounds. Ms. Thorpe, you have so much landscape to cover today, but I'm hoping that among the things that you address will be why it is that we shouldn't remand to the district court for fuller consideration of the question of your clients having accepted for a period of time the duty to defend, which is an issue that I'm not sure the district court adequately considered. And I'm not, as I sit here now, not overly persuaded by the district court's conclusion that this was somehow bundled in to the summary judgment briefing. The claim is made clearly in the complaint. The claim by the insured is made clearly in the complaint. I don't think the motions or judge's order addressed it, and so I'm not sure, as I sit here now, I'm prepared to affirm on everything. Right, and I will address that. I think I should go through in a little more logical place to get to that, because at the end of the day, if there's no duty to defend, never a duty to defend, what the insured received here was a windfall, and they weren't entitled to anything, and so the court was proper in dismissing the entire bundle, the entire claims. I'd like to start with the questions that you pose to counsel, and that is you are here obviously looking at this de novo. The letters that the insurance company sent to Mr. Rizzo did not quote every single exclusion in the policy, every single provision. They were very specific. They said you don't qualify as an insured. There are no damages claimed here. There's exclusion O. These are all dishonest conduct that is being alleged. Exclusion P, this is wrongful acts for your gain in profit, and there are punitive damages requested here, and we exclude that. Is it that they're not? I don't know that we've necessarily reached the issue, but is it they're not damages because they're restitutionary claims? Right. How could you possibly make restitution of money that was paid to somebody else? The money was never given just traditional restitution. Anyway, the money went to somebody else. Doesn't that look like damages? The claims here and the state clarified it in the whole demur proceedings back and forth is what they were after was restitution, not a damage claim that they would have to make a tort claim for. So if you look at the complaint, and I think that that is besides looking at the policy and that the provisions that were reserved on are in the policy and you can decide on those bases, but also looking at the complaints here. The state's complaint, the state having had to file that complaint in September of 2010 because Mr. Rizzo was still in charge of, in control of the city, and then the city's cross-complaint. And those are replete, 15 pages, 70 paragraphs of what the conduct is that is at issue here. And it is a story of dishonest conduct, all geared towards increasing the amount of money that Mr. Rizzo and his colleagues would make. And for a long period of time, all done very secretively, done very consciously, crafted is the word used, so that Mr. Rizzo received three times what any person in a similar situation in a similar community would have received, that his raises were increased exponentially each year, that he took, gave himself credit for 143 days out of a 250-day work year as vacation and as sick pay, and then cashed in those amounts, and did this all in a way that his retirement benefits would be increased. And did this all with memos, ordinances, five contracts, different ways so that no one could figure this out, and purposely put out to the public information that was misleading, that indicated that nothing was above board. So the story that's told in the state's complaint and mirrored in the city's complaint is a story of someone who has taken complete advantage of his position, his title, the authority given to him, done it all for his own personal gain. And what does the state and the city ask for? The city also, in addition, asks for a voiding of an employment contract, but they ask for a constructive trust, voiding of contracts, injunctions to prevent money to continue to be paid to them, and for restitution, those are the words used, disgorgement of the money that was received so that those monies can come back to the city. That is the complaint that is before the court, is what was tendered to the insurance company. Simultaneously, there were criminal actions, three criminal complaints and an indictment, and they were all tendered. So before the insurance company was that the city and state were after Mr. Rizzo to get the money back that he had wrongfully taken, and he'd taken in a dishonest and in a matter that concealed it so people couldn't easily find out what was going on. So the basis for finding that there's no coverage is several. Exclusion O&P, you've already talked about that a little bit, and let me talk about the major argument that Mr. Rizzo places forward is that there's been some waiver here. Exclusion O&P are not only cited in every single letter that the insurance company sent to Mr. Rizzo, they are quoted in full. There can be no question that the insurance company relied on a number of bases, including very specifically on Exclusion O and Exclusion P. And this court cannot manufacture coverage and cannot create coverage in a policy that doesn't exist. Right? Exclusion O and Exclusion P are very clear and very clearly pertain. Mr. Rizzo's counsel says that, in fact, there are covered and non-covered claims here, but they're not. Labeling something as negligence doesn't change the facts that are being alleged, and the case authority is clear on this. Just because you put a title on it doesn't change it. He's going to rebut. The record shows that the conduct was intentional, and if it shows that the conduct was intentional, it could not under this record have been negligent. Isn't that the argument you are making? That's it. It's dishonest. I didn't understand you say that, though. Oh, yeah. I'm going to ask your opponent this on rebuttal, but are you aware of any evidence beyond the complaint by Chief Adams that you discuss in your brief? Are you aware of any evidence that would distinguish the Chief Adams contract from the other contracts in the case? No, and I don't think it's fair to look at whether the chief said that he didn't do anything wrong or wasn't criminally charged. That's not what is at issue here. What is at issue here is what are the claims against Mr. Rizzo, and if you look at the complaint that the state filed, they spent quite a bit of time in this complaint talking about Mr. Adams. The paragraph 45 of the complaint at ER 563, Rizzo hired Adams as the city's police chief even though he believed that Adams was not able to fully perform his law enforcement duties because of preexisting injuries. He paid him half a million dollars. He gave him increases in salary every year, and he gave him the benefits of the retirement program. We're talking about what is Rizzo's conduct. What is Rizzo going to be held liable for? Not that Mr. Adams may have been successful in persuading that he was not responsible. The same with Spacia. So it all here, the focus is on Mr. Rizzo. We're not here looking at whether there's coverage for Adams or for Spacia, but for Mr. Rizzo and his conduct. The point was made that successful demurs were brought, and that was on the basis of immunity. Well, that doesn't take away from what is the complaint alleging. There may be defenses that could be made. It's like if this complaint had been a claim for slander, just because that's easier to think about, the insurance company has to look in the insurance policy and decide is there coverage for slander. They look at whether the facts alleged if true would be covered. If these facts in this complaint, as alleged or true, would there be coverage for these? A slander claim, you don't look at it and say, oh, but you could prove that it didn't actually happen, or you could prove that the statements were true, those defenses. Just as here you can say we have arguments, there's immunity, or maybe it didn't happen, or they're all wrong. That's not what you look at. You look at the facts as alleged. If true, are those covered by the policy? And here clearly they're not. They're at least dishonest under Exclusion O. They are for wrongful acts, for gain and profit, Exclusion P. Also, these same allegations lead to the conclusion that Mr. Rizzo is not qualified as an insured under the policy. Most of the attention is not spent on, there are two prongs for how he gets coverage. One is that he is a city manager and has to be acting on behalf of the city, and no one's even disputed that. He wasn't acting on behalf of the city in what is alleged here. The concentration in everybody's briefing is on whether he was in the course and scope of his employment. And the district court erred in this regard in that the court relied on the respondent superior line of cases. The case that really should be relied upon is the farmer's case from California. And the rule is that if someone's actions significantly deviate from what is their job, that they're not in the course and scope for purposes of insurance coverage. The Zulu case that counsel has cited in the briefing and brought to the court's attention did not use this substantial deviation from employment duty standard. Instead, it used the respondent superior standard. And the criticism of that case in the dissent and subsequently is that this is not the right standard to use. Even if you use that standard, the standard is do these acts would... Is it in the course and scope? You judge it by three things. Stimulating the government to greater vigilance, spreading the loss, and compensating victims. Those are the factors that are looked at for respondent superior. None of those are factors that would lead to a ruling here that Mr. Rizzo was acting in the course and scope. How can there be greater vigilance here when the city was run by Mr. Rizzo? How can there be a spreading of the loss by using a course and scope analysis here when at the end of the day that would mean the city would pay for this? And how is this compensating for the victim? The victim here is the city. It makes absolutely no sense here for the city's own insurance policy to be defending the victim, the perpetrator, Mr. Rizzo, against claims by the city. Makes no sense. So on that basis also, that Mr. Rizzo does not qualify as an insured, the court can find that there's no duty to defend. I've addressed damages. Let me get to your question, which is, can we dismiss the whole thing? Let me frame it for you a little bit so you'll understand what I mean. So I do have, as I said, the concern that the district court didn't give this issue its attention and anticipating something that you might say, which is, well, there never was a duty to defend in the first place. Even if the panel agrees with that, my reading of LaCitsa is if the insurer offers to, says, okay, we'll defend, then that by itself doesn't create a contract, but a contract might arise if the insured then says, okay, I agree. And what happened in LaCitsa was there was a back and forth between the insurer and the insured, and the court noted that a qualified acceptance is just a rejection. It's like a counteroffer. Well, maybe that's what happened here, and I assume that's what your client would say if we remanded, and that is that we offered to pay a certain amount and they were willing to accept, but only under certain conditions, so no contract was formed. I don't have a view as to that. I'm wondering why shouldn't the district court have to address that issue. I don't think that the district court has to go that far. There's never a duty to defend here. That means that any dime, quarter, dollar, thousands of dollars spent here was a windfall to the insured. It makes absolutely no sense to now ask the insurance company where there's no duty to defend to pay more, and then the insurance company sue Mr. Rizzo to get that money back. Does this cop take the position that if there's no duty to defend but the insurer tells the insured we're going to defend anyway, that that can never create a duty in the insurer? It is not a duty as such to pay. It was a windfall. We gave you money, and the record should be clear that the allegation here is that the insurance company did pay money and the dispute is over the rate and over whether the self-insured retention of $250,000 had to first be satisfied. So payment was made, and the insurance company has a right to reimbursement of that. It makes no sense to require the insurance company to pay more. I know that in your letter that you said that if you did undertake to defend and then decided later on that you didn't have a duty to defend that you might seek reimbursement. So when you refer to the fact that there's a windfall, are you telling us that the insurance company has not sought reimbursement of anything above the $250,000 self-insurance provision? At this point, the insurance company decided not to sue Mr. Rizzo to get back the money they already paid. But to ask the insurance company now to pay more, I bet that would follow with a reimbursement action. It just makes no sense for Mr. Rizzo to face another lawsuit to get money back for something he's not entitled to in the first place. But sometimes in the law we require process, even when it's not the most efficient thing. I'm still stuck on this question of legally, isn't it possible that a contract was created? And what I'm hearing you saying is, no, there wasn't. But moreover, even if there was, so what? Because we could sue to get reimbursement if we wanted to. Fine. That's a tactical decision the insurance company can make down the road. But it doesn't answer the question of whether a contract was created. Well, a reservation of rights letter is not a contract. That's the Michaelian case, 58 Cal Reporter 2nd, 133. And there is no offer acceptance consideration here. There is no contract. There's no contract pled. I do think that there is a practical aspect, which is what I'm also arguing, that it makes no sense to have an insured face another lawsuit for reimbursement when they had no right to the money in the first place. So it's both of those. No contract, and it makes no sense. Also, I think I should, I hope I've addressed your question. I think you have. Address the criminal question that was brought up earlier. And there is no, Stein is the case, and insurance code section 533.5 is the statute in California. An insurance company cannot be required to defend a criminal action. There's no provision in insurance policy that they will defend. It's a sticky question of state law, and we're three federal judges. If we went your way on inextricably intertwined, we don't need to reach this issue, do we? No, I don't think so. Are there other questions specifically to address? Otherwise, I will rehash. I don't think so. Okay. Then what we ask is that you affirm the decision of the district court in its entirety, including the dismissal of any claim that there is attorney fees owed. Thank you, Your Honor. Thank you, Ms. Thorpe. Mr. Spertus, you have time remaining. Thank you, Your Honor. I want to focus the courts specifically on the issue that there is nowhere in the record that shows that Mr. Rizzo's conduct was intentional. The inferences to the contrary are simply wrong. The attorney general dismissed its case. You mean he did it by accident? No, he could have done it negligently. They dismissed their case. There's nothing in the record that shows intentional misconduct by Mr. Rizzo. What the record shows is what he did, doesn't it? No, it doesn't because there are allegations of professional negligence that he unreasonably approved, for example, Police Chief Adams' contract, and then ultimately after five successful demurs, a successful appeal, and further process, the AG dismissed the allegations. There is nothing in the record that the court could point to that shows that Mr. Rizzo's conduct was inextricably intertwined with uncovered conduct, particularly in connection with the contracts for Police Chief Adams and Sposky. I thought on this record there's no dispute about what he did. There's absolutely a dispute about what he did. He didn't collect the money? He didn't take the money? No. He acted reasonably. There's no law that would prohibit the salaries paid anywhere in any statute anywhere. I'll let you go. I'll let you make a point. No, but, Your Honor, what the court is, I think, focused on is the conflict of interest. What I'm focused on is the record, and that's what we have to decide the case on, on the record that's before us. That's correct, and there's six volumes of it. There's not a word in the six volumes that shows any finding of intentional misconduct by Mr. Rizzo in any form. This is a conflict of interest case and a lack of authority, meaning that the city council didn't have the authority to approve the delegation that they made to Mr. Rizzo. We were on the eve of trial in the criminal case with resolutions from the city council to delegate authority to Mr. Rizzo, and the issue was were those resolutions posted for 72 hours before they were approved, yes or no? That is not, I think, what the court is thinking, you know, theft, embezzlement. No one has alleged that type of conduct, and I think because it's written about in the briefing, it creates its own momentum, but the underlying criminal case did not deal with any theft or embezzlement. The underlying civil case had some preliminary allegations of intentional misconduct, but then there was the alternative theory of unreasonable approval that triggered coverage. So it's just factually wrong that there is something in the record that would allow exclusion OMP to apply to the uncovered claims. The difficulty is you are arguing in rebuttal, and you're bringing up matters that weren't part of the earlier argument, and she won't get a chance to rebuttal. Your Honor, I said you're going to give counsel rebuttal right before it's asked her what in the record shows the conduct was intentional. So I am actually speaking to the court's turning to me right before she answered that question, and she didn't point to anything in the record because there is nothing in the record. This is not, you can't recast negligent claims as counsel is trying to do to say what this case is really about is theft and embezzlement. The law and insurance in California doesn't allow it. This is defense only, which means is there the potential for coverage, and the answer is yes, because if Mr. Rizzo unreasonably approved Randy Adams' contract because it was too high, then he's responsible personally for the damages, the waste. The essence of one of your significant arguments this morning is that once the Attorney General dismissed any claims that might have taken the complaint under ORP, then only covered claims remained, right? Yes. If I wanted to read a published case that went your way on that point, what was the best one? I think Horace Mann. Horace Mann is a child molestation case where the person had pled guilty, no low contender. Right. I think I quoted back the holding of that case to you when you were at the podium before. But the other cases relied on by the district court, two were indemnity cases, Ehrlich and Minteros, where basically the plaintiffs were assigned the defense of policy, and they were trying to get payment for damaged claims, so those don't apply. No, Rizzo's never going to seek indemnity in this case. This is only defense. In the other two cases, Mettle, which the district court cited, is simply saying that when you assume a duty under a contract and there's a contract exclusion, the duty to perform under the contract is excluded. That's all it has. There was a bond contract. Somebody tendered failure to comply with bond terms in Mettle, and the court said those duties to comply were assumed by contract and there's a contract exclusion. I want to ask you one other thing, and hopefully Judge Bobbie will cut me off. I think I'm more stuck on this point than my colleagues are. In response to my question about Lisitza, Ms. Thorpe said, well, among other things she said, there's never a breach of contract claim that was pled in this case. So I don't need to get to that point. Would you respond to that, please? The carrier said, first of all, the carrier paid nominal money. They did not pay real money. Once Mr. Rizzo got slightly above the $250,000. Are the amounts that were paid in the record? This is not before us. I mean this is what Ms. Thorpe said, and I was thinking I have no idea what she's talking about, and now I don't have any idea what you're talking about. Well, what is in the record is that there's a dispute over whether that retention had to be paid during the period where the carrier did say there was a defense, and that's what led to Ms. Thorpe's comment, so I'm responding to that. That's fine. I just want to know, Ms. Thorpe doesn't think we need to get to this Lisitza point. She made a point about your not having made a certain kind of claim, that's all. It is critical that the court follow process. For Ms. Thorpe to say that, well, although we promised to pay and didn't, since we would have no duty once all facts are known, which they never have been, this court should not require remand for the claims unrelated to the duty to defend. On this record, the district court could easily conclude that your response to the insurer was a conditional acceptance that extinguished their offer. I don't believe the district court can because we made our appearances and defended the cases and did the work. I don't think the judge even reached that. That's the critical issue before this court. But if we have the chance to go back respectfully, I think she's going to find if you said you had to pay, you have to pay because that's where you get the benefit of the work. The carrier can then escape, say I'll pay, escape paying a penny, and then later on if there's a finding of no coverage, therefore retroactively no duty to defend, rather than sue for reimbursement, they can just say we got free work from an attorney, and that's not what the law provides. You don't disagree that ISCOP could sue for reimbursement if they thought they were entitled to it? No, absolutely not. In fact, Mr. Rizzo would welcome that lawsuit. He was very grateful that we appeared for him. We discussed this issue. There's no conflict in my seeking payment and then reimbursement. That's exactly what Mr. Rizzo wants. Ms. Thorpe is just incorrect when she says that it's unfair to Mr. Rizzo. We don't need that type of paternalism. Mr. Rizzo was very grateful for the four years of litigation work done by my office and was very hopeful that the carrier will pay, and he'll be defending a reimbursement claim happily. Okay, I think we understand your argument. We've gone well over time. Thank you, Mr. Spertus. Thank you, Ms. Thorpe. We appreciate the arguments of counsel in a sophisticated case. The Court has completed the oral argument calendar for this session, and we are adjourned. Thank you.
judges: Farris, Bybee, Tigar